UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

CICILIA GILBERT,

                    Plaintiff,          19-cv-1938 (JGK)

      - against –               <u>OPINION AND ORDER</u>

DELL TECHNOLOGIES, INC.,

                    Defendant.
——————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Cicilia Gilbert, brings this action against
the defendant, Dell Technologies, Inc. ("Dell"), alleging sex
discrimination in violation of Title VII of the Civil Rights Act
of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"); the New
York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 <u>et
seq.</u>; and the New York City Human Rights Law ("NYCHRL"), N.Y.C.
Admin. Code § 8-101 <u>et seq.</u> The plaintiff alleges that she was
employed as the "Director, Systems Engineer, at EMC Virtustream,
a business unit of Dell." Complaint ¶ 2. Under each statute, the
plaintiff brings claims alleging retaliation, wrongful
termination, and hostile work environment. The plaintiff seeks
(1) a declaratory judgment that Dell's acts violated Title VII,
the NYSHRL, and the NYCHRL, (2) a permanent injunction enjoining
Dell from engaging in discrimination against employees who are
transgender or undergoing gender transition, or those associated

1

with such employees, (3) an order for Dell to carry out training to provide equal employment opportunities, (4) various types of damages, and (5) reinstatement.[1] The defendant has moved to compel the plaintiff to arbitrate her claims and to dismiss, or in the alternative, to stay the proceedings. At issue in this motion is whether the parties entered into a validly formed and enforceable arbitration agreement and whether the plaintiff's claims are arbitrable. For the reasons explained below, the defendant's motion to compel arbitration and stay the case is **granted.**

## I.

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted.

### A.

The plaintiff began working at Virtustream, Inc. ("Virtustream") on or about October 15, 2015, as a full-time Project Manager. Wright Decl. ¶ 6. Virtustream is a wholly-owned subsidiary of EMC Corporation ("EMC"), which is itself a wholly-owned subsidiary of Dell. Id. at ¶ 4. EMC acquired Virtustream in 2015 and Dell acquired EMC in September 2016. Compl. ¶ 37; First Burkhardt Decl. Ex. B. The plaintiff contends that the

---

[1] By Court Order on July 2, 2019, the complaint was amended to clarify that the plaintiff seeks reinstatement.

corporate relationship between Virtustream, EMC, and Dell is unclear.

When the plaintiff began working at Virtustream, the plaintiff earned an annual salary of $160,000 and was eligible for a discretionary bonus. Wright Decl. ¶ 7. On or about August 15, 2016, the plaintiff received a promotion to Director, Systems Engineer. Id. at ¶ 8. In this new position, the plaintiff earned an annual salary of $175,000 and was eligible for a bonus of up to $15,000 a year. Id. at ¶ 12. As a Director, Systems Engineer, the plaintiff remained an at-will employee. Wright Decl. Ex. A.

The plaintiff alleges that she was subjected to a hostile work environment because of her sex or sex stereotyping, including gender, gender expression, gender identity, and gender transition in that she is a transgender woman. Compl. ¶ 185. The plaintiff alleges that she was subjected to retaliation because of her complaints about her treatment and was eventually terminated in September, 2018. Id. at ¶¶ 167, 191, 198.

**B.**

On the day of her promotion in 2016, the plaintiff received and accessed an email containing a link to a DocuSign envelope with three documents: the offer letter, the Key Employment Agreement ("KEA") and the EMC Arbitration Policy. Wright Decl.

3

¶¶ 13-15. The offer letter offered the plaintiff the position of Director, Systems Engineer, with "Virtustream, Inc., an EMC Company." Wright Decl. Ex. A. The KEA applies to senior level employees of EMC Corporation. Wright Decl. Ex. B. The plaintiff executed the offer letter and KEA on that same day and selected a button marked "FINISH" after reviewing the entirety of the DocuSign envelope. Wright Decl. ¶¶ 16-18. Directly above the signature line on the KEA was the KEA's arbitration provision. Wright Decl. Ex. B. This arbitration provision states, "[y]ou agree to binding arbitration of Legal Disputes as defined in, and pursuant to the terms of, the EMC Arbitration Policy, the current version of which is attached to this Key Employee Agreement and incorporated herein by reference." Id.

Section 6(g) of the KEA states that the agreement "may be amended or modified only by written agreement between [the plaintiff] and the Office of the General Counsel." Id. Section 6(f) of the KEA provides as follows:

> You acknowledge that you have received and reviewed the attached Business Conduct Guidelines, and the Arbitration, Insider Trading, Anti-Harassment and Information Security policies. You agree that you will be bound and will abide by such Guidelines and policies and all other Company policies, as they are amended from time to time by the Company in its discretion.

Id. The EMC Arbitration Policy has not been amended since the plaintiff agreed to it and the defendant represents that it

4

seeks only to enforce the EMC Arbitration Policy as it was agreed to by the plaintiff. Section 6(j) of the KEA states that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the doctrine of conflicts of law." Id. Section 6(m) of the KEA provides as follows:

> You understand and acknowledge that, unless and until you execute another Key Employee Agreement that supersedes this Agreement, this Agreement is applicable even if you change positions within the Company. The terms of this Agreement . . . shall continue to apply with full force and effect in the event that you . . . are transferred or assigned to, or otherwise work for, any affiliate, subsidiary or other division or business unit of the Company.

Id.

The EMC Arbitration Policy covers "Legal Disputes" initiated either:

> (a) By EMC Corporation or any of its wholly owned subsidiaries (collectively "EMC" or the "Company") against a current or former Employee of EMC ("Employee"); or
> (b) by an Employee against any of the following: (i) the Company, (ii) its current or former officers, directors, employees or agents in their capacity as such, and/or (iii) predecessors, successors and assigns of (i) and (ii).

Wright Decl. Ex. C. Legal Disputes are defined in relevant part to include "any claim relating to (a) compensation, (b) terms and conditions of employment, (c) termination of employment, (d) discrimination, harassment or retaliation,

including under Title VII of the Civil Rights Act . . . and
any other federal, state, or local anti-discrimination
laws, and (e) any other employment-related legal claim."
Id. However, under Section 1.1(C)(i) of the policy, the
agreement to arbitrate Legal Disputes does not apply to any
action "seeking temporary, preliminary or permanent
injunctive relief, or declaratory relief or declaratory
judgment." Id. But, "[i]f the subject matter of such an
action otherwise satisfies the definition of a Legal
Dispute . . ., claims for money damages arising from the
same subject matter will be submitted to arbitration." Id.
In addition, Section O states:

> Jurisdictional and arbitrability disputes that arise
> in connection with Legal Disputes shall be submitted
> to and ruled upon by the arbitrator and not by a
> court. The arbitrator shall, however, have no
> authority to make rulings on matters arising in
> connection with . . . (ii) claims excluded from this
> policy under Section C. above, including but not
> limited to claims seeking temporary, preliminary or
> permanent injunctive relief or declaratory relief in
> court, which matters shall be exclusively determined
> by a court.

Id.


## II.

Under 9 U.S.C. § 4, "a district court must enter an order
to arbitrate upon being satisfied that the making of the
agreement for arbitration or the failure to comply therewith is

not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 n.27 (1983) (internal quotation marks omitted).

> [A] court asked to stay proceedings pending arbitration in a case covered by the [Federal Arbitration] Act has essentially four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (citations omitted).

## A.

Arbitration is a matter of contract and a party cannot be required to arbitrate if there is no binding arbitration agreement. A court, rather than an arbitrator, should decide whether a valid agreement to arbitrate exists. See Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392 (2d Cir. 2011).

"The determination of whether parties have contractually bound themselves to arbitrate a dispute – a determination involving interpretation of state law – is a legal conclusion . . . ." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002). More specifically, "[a]rbitration clauses are a

matter of contract law and, if valid, should be enforced."
DuBois v. Macy's E. Inc., 338 F. App'x 32, 33 (2d Cir. 2009)
(summary order). Thus, "[w]hen deciding whether the parties
agreed to arbitrate a certain matter," courts generally "should
apply ordinary state-law principles that govern the formation of
contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938,
944 (1995); accord Rightnour v. Tiffany & Co., 239 F. Supp. 3d
744, 749-50 (S.D.N.Y. 2017).

The KEA states that it is governed by Massachusetts law.
Under Massachusetts law, the formation of a contract requires
"offer, acceptance, and an exchange of consideration or meeting
of the minds . . . ." Vadnais v. NSK Steering Sys. Am., Inc.,
675 F. Supp. 2d 205, 207 (D. Mass. 2009); Northrup v. Brigham,
826 N.E.2d 239, 241 (Mass. App. Ct. 2005). For at-will
employees, acceptance of an arbitration agreement need not be
express and in writing and continued employment constitutes
adequate consideration for the contract. See Ellerbee v.
GameStop, Inc., 604 F. Supp. 2d 349, 354 (D. Mass. 2009).
Massachusetts courts have also found that consideration in
arbitration agreements can be provided "by a mutuality of
promises" to arbitrate, which satisfies the requirement that
"there is either a benefit to the promisor or a detriment to the
promisee." DeLuca v. Bear Stearns & Co., 175 F. Supp. 2d 102,
112-13 (D. Mass. 2001).

On or about August 15, 2016, plaintiff received an offer of
employment with Virtustream, a subsidiary of EMC, as a Director,
Systems Engineer. The plaintiff received the offer and the terms
in the KEA, which incorporated the EMC Arbitration Policy, on
the same day; by executing the KEA, the plaintiff accepted the
offer and clearly manifested her intent to be bound by its
terms. The plaintiff's continued employment as an at-will
employee constituted sufficient consideration for the agreement
to be valid, as did the mutual obligation of both the plaintiff
and EMC to be bound by the arbitration provision.

Under Massachusetts law, a valid agreement to
arbitrate statutory claims requires that the employer

> gave some minimal level of notice to the employee that
> statutory claims are subject to arbitration. This is
> an objective test: the sufficiency of the notice turns
> on whether, under the totality of the circumstances,
> the employer's communication would have provided a
> reasonably prudent employee notice of the waiver of
> the right to proceed in a judicial forum.

United States ex rel. Hagerty v. Cyberonics, Inc., 146 F.
Supp. 3d 337, 346 (D. Mass. 2015), aff'd sub nom. Hagerty
ex rel. United States v. Cyberonics, Inc., 844 F.3d 26 (1st
Cir. 2016) (internal quotation marks and citations
omitted). The plaintiff had sufficient notice of the EMC
Arbitration Policy. The email she received contained a link
to only three documents: the offer letter, the KEA, and the

EMC Arbitration Policy. The only sentence on the KEA's signature page was a sentence that incorporated the EMC Arbitration Policy and that was placed prominently above the signature line. The EMC Arbitration Policy prominently mentioned discrimination claims under federal and state laws as included in the subjects of mandatory arbitration. The plaintiff also does not deny that she selected a "FINISH" button after reviewing the entirety of the documents received.

Despite this, the plaintiff argues that she is not bound by the contract for two main reasons: first, that Dell cannot enforce the arbitration agreement because it is not a party to the KEA, the merger of Dell and EMC made the KEA inapplicable to the plaintiff, and the plaintiff was not an employee of EMC; and second, that the agreement was illusory. Neither argument is tenable.

**1.**

The fact that a party is not a signatory to an arbitration agreement does not foreclose the possibility that it may be bound by the arbitration agreement. "The FAA requires only that the arbitration agreement be set in writing; it does not require that the writing be signed by the parties." Gonzalez v. Toscorp Inc., No. 97 CIV. 8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y.

Aug. 5, 1999). While it is different for a nonsignatory, such as
Dell, to attempt to enforce an arbitration agreement against a
signatory, such as the plaintiff, from a signatory's attempt to
enforce an arbitration agreement against a nonsignatory, courts
generally have recognized six theories for binding
nonsignatories to arbitration agreements: "(1) incorporation by
reference; (2) assumption; (3) agency; (4) veil-piercing/alter
ego; (5) equitable estoppel, and (6) third-party beneficiary."
Machado v. System4 LLC, 28 N.E.3d 401, 408 (Mass. 2015).

Dell argues that the plaintiff, a signatory to the
arbitration agreement, is equitably estopped from arguing that
she is not bound by the arbitration agreement she signed. A
nonsignatory's ability to enforce an arbitration provision
through estoppel is determined by state law. See Laumann v.
Nat'l Hockey League, 989 F. Supp. 2d 329, 339 n.47 (S.D.N.Y.
2013)(citing, inter alia, Arthur Andersen LLP v. Carlisle, 556
U.S. 624, 630-31 (2009)). Massachusetts courts have looked at
federal courts for principles binding nonsignatories to
arbitration agreements. The Massachusetts Supreme Judicial Court
has noted that while "[f]ederal courts have been hesitant to
estop a nonsignatory seeking to avoid arbitration, they
generally have been willing to estop a signatory from avoiding
arbitration with a nonsignatory." Machado, 28 N.E.3d at 408
(internal quotation marks and citation omitted). Under

Massachusetts law, a nonsignatory may compel arbitration under equitable estoppel when the party's claims are "intimately founded in and closely related to an agreement which also mandates arbitration." Id. at 409.

The plaintiff entered into a contract, the KEA, with her employer. The KEA incorporated the EMC Arbitration Policy, which the plaintiff freely acknowledged. Upon signing the KEA, the plaintiff received her promotion and continued her employment. The plaintiff's claims allege violations of federal, local, and state anti-discrimination laws by Dell in its role as her employer. The plaintiff's claims are intimately founded on and related to her employment, which is governed by the KEA that established the employment relationship in the first place. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 127-28 (2d Cir. 2010) (compelling employee, whose employment was subject to her assent to an arbitration agreement, to arbitrate sex discrimination claims with a nonsignatory co-employer); see also Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 103 (D.D.C. 2013) (finding that signatory's claims of age discrimination, retaliation and failure to pay were intertwined with the employment that signatory accepted with nonsignatory employer). Therefore, the plaintiff is equitably estopped from denying that she is bound to arbitrate the employment disputes that she agreed to arbitrate in the KEA.

Moreover, if the plaintiff had sued EMC as her employer, she would plainly have been bound by the arbitration agreement in the KEA. She cannot avoid that result by choosing to sue only Dell, an affiliated company. Pursuant to Section 6(m) of the KEA, the plaintiff agreed that the KEA would continue to apply if the plaintiff otherwise worked for any affiliate of EMC, which Dell plainly is.[2] Wright Decl. Ex. B.

The plaintiff then argues that the acquisition of EMC by Dell released her from the application of the KEA based on Section 6(m) of that agreement. Section 6(m) actually undermines the plaintiff's argument. Section 6(m) provides that the KEA "is applicable even if you change positions within the Company." It then goes on to provide that the KEA "shall continue to apply with full force and effect in the event that you are transferred or assigned to, or otherwise work for, any affiliate, subsidiary or other division or business unit of the Company." On its face, Section 6(m) does not release the plaintiff from her obligations. She does not allege that her position at the time she signed the KEA was changed in any way. She has not been transferred to any company other than the one she worked for at the time she signed the KEA, namely Virtustream, which is a

---

[2] An affiliate is defined as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (11th ed. 2019).

13

subsidiary of EMC, which is now a subsidiary of Dell. To the extent the plaintiff relies on the acquisition of EMC by Dell, the argument does not help her case at all. Dell is plainly an affiliate of EMC and Virtustream, and Section 6(m) provides that the KEA will continue to apply if the plaintiff works for any affiliate of EMC.

The plaintiff also argues that the EMC Arbitration Policy does not apply because it covers only employees of EMC, and she claims to be an employee of Dell. This argument is contradicted by the plaintiff's complaint, in which the plaintiff herself states that she worked at EMC Virtustream, a business unit of Dell. Compl. ¶ 2. In fact, the plaintiff had been employed by EMC for over a year prior to signing the KEA. Furthermore, the offer letter that the plaintiff received for the position of Director, Systems Engineer also clearly welcomed her to join the team at "Virtustream Inc., an EMC Company." Wright Decl. Ex. A.

None of the plaintiff's arguments based on the corporate structure of her employer avoid the fact that the plaintiff signed the KEA with her employer and that agreement contains an arbitration provision that she freely acknowledged. She continues to be bound by that agreement to arbitrate her employment disputes.

14

**2.**

Next, the plaintiff argues that the agreement to arbitrate was illusory because EMC retained its ability unilaterally to amend the contract.

Under Massachusetts law, an agreement to arbitrate can be illusory if the agreement can be modified unilaterally by one party. See McNamara v. S.I. Logistics, Inc., No. 17cv12523, 2018 WL 6573125, at *3 (D. Mass. Dec. 13, 2018) (collecting cases). The KEA has conflicting provisions regarding the ability of a party to amend its terms. The defendant argues that Section 6(g) of the KEA, which states that the KEA can be modified only upon written agreement between the plaintiff and the Office of the General Counsel, governs. However, the KEA also states that the Company's guidelines and policies, including policies on arbitration, may from time to time be amended in the Company's discretion. Wright Decl. Ex. B, Section 6(f). This suggests that the arbitration policy, although not the KEA, could be amended by the Company without any written agreement of modification between the plaintiff and the Office of the General Counsel.

To the extent that the plaintiff argues that Section 6(f) of the agreement made the agreement to arbitrate illusory because of a lack of mutuality, the argument fails. While "[i]t is true that a promise that binds one to do nothing at all is

15

illusory and cannot be consideration," <u>Graphic Arts Finishers, Inc. v. Bos. Redevelopment Auth.</u>, 255 N.E.2d 793, 796 (Mass. 1970), consideration may be supplied by continued employment, <u>see</u> <u>Ellerbee</u>, 604 F. Supp. 2d at 354. In this case, the plaintiff's continued employment provided consideration for the agreement she signed. In addition, as another district court has found in analyzing a similar EMC Arbitration Policy, consideration is provided by the defendant's acceding to binding arbitration in its briefings before the Court. <u>See</u> <u>Quinn v. EMC Corp.</u>, 109 F. Supp. 2d 681, 685 (S.D. Tex. 2000). The defendant here seeks to enforce the arbitration policy as it existed at the time the parties agreed to it, and the defendant has waived any right to amend the plaintiff's agreement to arbitrate.

To the extent that the plaintiff argues that Section 6(f) of the KEA is unconscionable, the plaintiff "must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." <u>Machado</u>, 28 N.E.3d at 414. The plaintiff has failed to make such a showing. In <u>Hunter v. EMC Corp.</u>, No 18-12273 (D. Mass. Nov. 21, 2018), the district court rejected a similar challenge to the same terms as the KEA and EMC Arbitration Policy in this case. The court found that the

16

ability to amend the arbitration agreement was not
unconscionable, because federal policy favors arbitration and
because the plaintiff was not subject to unfair surprise by
agreeing to resolve disputes by arbitration. Id. It is not
unconscionable to require the plaintiff to arbitrate in
accordance with the terms of the arbitration policy that the
plaintiff agreed to and which the defendant seeks to enforce
without any changes.

Finally, it should be noted that if the provision of the
arbitration agreement that allowed a discretionary change by the
employer were invalid, it could be severed from the remainder of
the contract. See Ragone, 595 F.3d at 124-25; see also Cadillac
Auto. Co. of Bos. v. Engeian, 157 N.E.2d 657, 660 (Mass.
1959)("[I]t is well settled that if the part of a contract which
is valid, can be separated from that which is void, and carried
into effect, it may be done.") (internal quotation marks and
citations omitted). The provisions of the Federal Arbitration
Act ("FAA") "manifest a liberal federal policy favoring
arbitration agreements." Gilmer v. Interstate/Johnson Lane
Corp., 500 U.S. 20, 25 (1991). Given this "pro-arbitration
policy" of the FAA, Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d
Cir. 2015), the ability to make a unilateral change in the
arbitration policy could be waived, as in this case, or not
enforced without affecting the validity of the arbitration

agreement. Therefore, the arguments against enforcement of the arbitration agreement are without merit.

**B.**

Under the second step of the Genesco test, the court must determine the scope of the EMC Arbitration Policy and whether the plaintiff's claims are arbitrable. "The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" Schneider v. Kingdom of Thailand, 688 F.3d 68, 71 (2d Cir. 2012) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). If "there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," then the Court's inquiry ends. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 528 (2019).

The EMC Arbitration Policy provides plainly that
"[j]urisdictional and arbitrability disputes that arise in
connection with Legal Disputes shall be submitted to and ruled
upon by the arbitrator and not by a court." Wright Decl. Ex. C,
Section O. Legal Disputes subject to arbitration include any
claims relating to termination of employment, discrimination,
harassment, or retaliation under Title VII of the Civil Rights
Act and any other federal, state, or local anti-discrimination
laws. In her operative complaint,[3] the plaintiff brought nine
separate causes of action, alleging retaliation, improper
termination, and hostile work environment under federal, state
and city laws. These claims are within the scope of the EMC
Arbitration Policy's definition of Legal Disputes, and in any
event, the parties gave to the arbitrator the determination of
the arbitrability of any such dispute. Therefore, the
plaintiff's claims for damages, for (1) "past and future
pecuniary losses resulting from the unlawful practices
complained of," (2) "past and future non-pecuniary losses
resulting from the unlawful practices complained of . . .
including humiliation, loss of enjoyment of life, damage to her
profession [sic] reputation, and other non-pecuniary losses,"

---

[3] The original complaint has been amended only to add a request for
reinstatement. See supra n. 1.

19

and (3) "punitive and special damages" for "malicious and reckless conduct" must be referred to arbitration.

The EMC Arbitration Policy clearly exempts disputes in connection with claims seeking temporary, preliminary or permanent injunctive relief or declaratory relief from the definition of Legal Disputes subject to arbitration; those claims are to be determined exclusively by a court. The plaintiff seeks reinstatement, which is "purely prospective injunctive relief that orders the [employer] to return the former employee to the . . . payroll." Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified, 793 F.2d 457 (2d Cir. 1986); see also Muller v. Costello, 997 F. Supp. 299, 304-05 (N.D.N.Y. 1998), aff'd, 187 F.3d 298 (2d Cir. 1999) (granting injunctive relief in the form of reinstatement to a state employee who suffered from asthma). Because reinstatement is a form of injunctive relief, it is not arbitrable under the EMC Arbitration Policy. The plaintiff's non-damages claims seek various types of declaratory and injunctive relief, which include: (1) a declaratory judgment that Dell's acts were unlawful and violate Title VII, NYSHRL, and NYCHRL, (2) a permanent injunction enjoining Dell from engaging in unlawful discrimination against employees who are transgender or undergoing gender transition, or those associated with such employees, and (3) an order directing Dell to carry out

20

policies, practices, programs and training to provide equal employment opportunities to employees who are transgender. These claims are also not arbitrable under the EMC Arbitration Policy.

### C.

Under the third step of the Genesco test, courts must decide whether Congress intended federal statutory claims asserted to be nonarbitrable. The plaintiff brings several claims under Title VII. The defendant correctly argues that Congress did not intend Title VII claims to be nonarbitrable. See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 2 F. Supp. 2d 516, 520 (S.D.N.Y. 1998), aff'd, 191 F.3d 198 (2d Cir. 1999); see also Raiola v. Union Bank of Switzerland, LLC, 47 F. Supp. 2d 499, 505 (S.D.N.Y. 1999)(collecting cases).

### D.

The final issue is whether this case should be stayed pending arbitration of the issues the parties agreed to arbitrate. The FAA provides that if a court determines that an issue "is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. "[A] mandatory stay is consistent with the FAA's underlying policy to move the parties to an arbitrable dispute out of court and into arbitration as

21

quickly and easily as possible." <u>Katz</u>, 794 F.3d at 346 (internal quotation marks and citation omitted). When all the claims in an action have been referred to arbitration, district courts must stay the proceedings pending arbitration when a stay has been requested. <u>Id.</u> at 347. However, when only some claims are arbitrable, courts must decide whether the case should be stayed with respect to any non-arbitrable claims. <u>See</u> <u>Tessemae's LLC v. Atlantis Capital LLC</u>, No. 18cv4902, 2019 WL 3936964, at *7 (S.D.N.Y. Aug. 20, 2019). "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." <u>Genesco</u>, 815 F.2d at 856. "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." <u>Winter Inv'rs, LLC v. Panzer</u>, No. 14cv6852, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015). This can help "minimize[e] inconsistent results and conserv[e] judicial resources." <u>Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg</u>, No. 92cv2236, 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992). A stay of the plaintiff's claims for equitable relief is appropriate in this case because the claims overlap with her claims for damages and require an assessment of the defendant's liability.

The plaintiff attempts to argue that if any portion of her action seeks injunctive relief, the entire action should be nonarbitrable. However, the EMC Arbitration Policy states that claims for money damages, that relate to Legal Disputes and that arise from the same subject matter of claims for injunctive and declaratory relief that are excluded from arbitration, shall be submitted to arbitration. Wright Decl. Ex. C, Section C(i).

Therefore, the Court will stay the nonarbitrable claims that seek reinstatement and other forms of declaratory and injunctive relief until after the arbitrator has decided the issues of liability and damages.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendant's motion to compel arbitration is **granted**. Pursuant to 9 U.S.C. §§ 3 and 4, the parties are directed to proceed to arbitration in the manner provided for in the EMC Arbitration Policy on the issues of liability and damages. Nonarbitrable claims seeking reinstatement, and other claims for declaratory and injunctive relief, are **stayed** pending the conclusion of the arbitration. The Clerk is directed to close Docket No. 13.

**SO ORDERED.**

**Dated:**    **New York, New York**
         **November 11, 2019**         _____/s/_____

                                      **John G. Koeltl**
                              **United States District Judge**